765 So.2d 197 (2000)
Stanley REINISH and Carol Reinish, Appellants,
v.
John K. CLARK, in his official capacity as Tax Collector of Palm Beach County and as representative of other county tax collectors in the State of Florida; Gary Nikolits, in his official capacity as Property Appraiser of Palm Beach County; and L.H. Fuchs, in his official capacity as Executive Director of Florida Department of Revenue, Appellees.
No. 1D98-3973.
District Court of Appeal of Florida, First District.
July 20, 2000.
*201 C. Oliver Burt, III of Burt & Pucillo, L.L.P., West Palm Beach; James K. Green of James K. Green, P.A., West Palm Beach; M. David Gelfand, New Orleans, Louisiana; Michael J. Freed, of Much, Shelist, Freed, Deneberg, Ament, Bell & Rubenstein, P.C., Chicago, Illinois; and Harry O. Thomas, of Katz, Kutter, Haigler, Alderman, Bryant & Yon, P.A., Tallahassee, for Appellants.
Robert A. Butterworth, Attorney General; Joseph C. Mellichamp, III, Senior Assistant Attorney General; and Jarrell L. Murchison, Assistant Attorney General, Tallahassee, for Appellees.
BROWNING, J.
Stanley and Carol Reinish, who were the plaintiffs in the lower court, appeal a final order dismissing their second amended complaint with prejudice. In his official capacity as Executive Director of the Florida Department of Revenue, L.H. Fuchs, one of the defendants below, cross-appeals those portions of the final order finding that the circuit court had subject-matter jurisdiction and that the Reinishes had standing to bring a facial challenge testing the validity of the Florida homestead tax exemption. Concluding that the trial court had jurisdiction pursuant to Chapter 86, Florida Statutes, and that the Reinishes had standing to bring a facial constitutional challenge, we affirm the lower court's rulings as to those issues raised on cross-appeal. Likewise, we conclude that the trial court correctly found the Reinishes' three theories of unconstitutionality to be without legal merit. Accordingly, we affirm the order dismissing the second amended complaint with prejudice.

JURISDICTION AND STANDING
In their second amended complaint, the Reinishes asserted circuit-court jurisdiction pursuant to Article V, section 20(c)(3), of the Florida Constitution, and section 26.012, Florida Statutes (1997), both of which address "cases involving legality of any tax assessment or toll"; and pursuant to sections 86.011, 86.021, and 86.061, Florida Statutes (1997), the Declaratory Judgments Act. Their action sought a declaration that the constitutional[1] and statutory[2] Florida homestead tax exemption provisions violate the federal Equal Protection Clause, the Privileges and Immunities Clause, and the "dormant" Commerce Clause to the extent that the homestead tax exemption is available only to certain permanent residents of Florida. In addition to a declaration of the rights of the parties and injunctive relief, the Reinishes sought an accounting by the defendants and a refund of such portions of the residential real estate taxes paid by the Reinishes and their class that they would not have been required to pay if the homestead tax exemption had been available to them.[3]
At the onset of this litigation and at all times pertinent to this action, the Reinishes have remained residents of Chicago, Illinois. Around September 1994, they bought a parcel of real estate in Palm Beach County, Florida, for use as a part-time residence. Since then, they have paid real estate taxes as assessed on the Florida property but have been ineligible to receive an exemption of the first $25,000 of assessed value because their use of the Florida property does not qualify it as a "permanent residence." § 196.031(3)(d), Fla. Stat. The Reinishes admit that they stay in the Florida property only about 4-5 months each year and reside in Illinois for the greater part of the year.
In the trial court, Executive Director Fuchs and the other defendants argued 1) *202 that the Reinishes could not circumvent the jurisdictional requirements of section 194.171, Florida Statutes (1997), by seeking relief in the form of a refund under Chapter 86; and 2) that the Reinishes failed to allege that they had contested their assessment within 60 days from the date the assessment was certified for collection in any of the tax years in question. § 194.171(2), Fla. Stat. On that basis, the defendants moved to dismiss for lack of subject-matter jurisdiction. § 194.171(6), Fla. Stat. Furthermore, the defendants argued that the Reinishes lacked standing because they neither alleged compliance with the procedures governing the annual application for homestead tax exemption under section 196.011(1), Florida Statutes (1997), for creating a case or controversy; nor did they claim to have been denied the homestead tax exemption after filing a timely, written application for one.
The trial court found that it had subject-matter jurisdiction under Chapter 86. In support of this finding, the Reinishes properly rely on well-established case law holding that in actions such as this, where the facial constitutionality of a tax or tax exemption provision is challenged, "fulfilling the state's refund procedures is not a condition precedent to bringing a constitutionally-based refund action." Public Medical Assistance Trust Fund v. Hameroff, 689 So.2d 358, 359 (Fla. 1st DCA 1997), approved in pertinent part, 736 So.2d 1150 (Fla.1999); Department of Revenue v. Nemeth, 733 So.2d 970, 973-74 (Fla.1999). The Reinishes are neither challenging their assessment nor seeking an exemption for which they claim present entitlement. Rather, they are challenging the constitutional and statutory requirement of establishing a Florida "permanent residence" to be eligible for the homestead tax exemption. Situations such as this constitute an exception to the general rule that requires a party first to seek, and then be denied, a refund before suing for a tax refund. See Department of Revenue v. Kuhnlein, 646 So.2d 717, 720 (Fla.1994) (rejecting State's argument that class action was barred jurisdictionally in circuit court because none of class representatives had applied for refund pursuant to statutory provisions); Hameroff, 689 So.2d at 359; State ex rel. Devlin v. Dickinson, 305 So.2d 848 (Fla. 1st DCA 1974). Given the reasoning set forth in the supreme court's Kuhnlein opinion, the trial court properly found jurisdiction over the instant action.
Kuhnlein, 646 So.2d at 717, as well as several earlier supreme court decisions, also supports the trial court's finding that the Reinishes have standing to challenge the Florida homestead tax exemption provisions. Florida does not adhere to the "rigid" doctrine of standing used in the federal system. See id. at 720. Rather, the general requirement for standing in Florida posits that "every case must involve a real controversy as to the issue or issues presented," so that "the parties must not be requesting an advisory opinion." Id. at 720-21. In a seminal 1952 decision, the supreme court set out the Florida rule:
Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interests are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answers propounded from curiosity. These elements are necessary as being judicial in nature and *203 therefore within the constitutional powers of the courts.
May v. Holley, 59 So.2d 636, 639 (Fla. 1952); Martinez v. Scanlan, 582 So.2d 1167 (Fla.1991). The Declaratory Judgments Act is "substantive and remedial," with a purpose "to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations," and the Act is "to be liberally administered and construed." § 86.101, Fla. Stat. (1997). Individuals can challenge the validity of a statute in a declaratory action. § 86.021, Fla. Stat. (1997).
We conclude that the Reinishes clearly have satisfied the standing requirements of May and its progeny. See Chiles v. Children A, B, C, D, E, and F, 589 So.2d 260, 263 n. 5 (Fla.1991) ("This Court has long held that a citizen and taxpayer can challenge the constitutional validity of an exercise of the legislature's taxing and spending power without having to demonstrate a special injury."). In determining that nothing in Florida law required the plaintiffs in Kuhnlein to pay the impact fee or to request a refund to gain standing, the supreme court found it sufficient "that these plaintiffs face penalties for failure to pay an allegedly unconstitutional tax." 646 So.2d at 720. Similarly, the Reinishes alleged that they have had to pay more than their lawful share of taxes because of a tax exemption that unconstitutionally discriminates against them based on their out-of-state residency. Their being assessed full property taxes annually, without the benefit of the homestead tax exemption, created a bona fide, actual, present, and practical need for the declaration sought.

STANDARD OF REVIEW
The challenged final order dismissing the second amended complaint for failure to state a claim is premised entirely upon the trial court's conclusion that the Florida homestead tax exemption does not, on its face, violate the United States Constitution on any of the grounds asserted by the plaintiffs. Therefore, the lower tribunal's rulings are strictly questions of law to which a de novo standard of review applies. See Brewer v. Clerk of Circuit Court, Gadsden County, 720 So.2d 602, 603 (Fla. 1st DCA 1998).

COUNT ONE
The first count alleged that in denying the homestead tax exemption to the Reinishes and their class solely on the basis of their out-of-state residency, the constitutional and statutory homestead provisions have created a classification and/or distinction that is wholly arbitrary and discriminatory, thereby denying equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.[4] "A State may not treat those within its borders unequally solely on the basis of their different residences or States of incorporation." Williams v. Vermont, 472 U.S. 14, 23, 105 S.Ct, 2465, 86 L.Ed.2d 11 (1985); Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985); WHYY, Inc. v. Borough of Glassboro, 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968). For reasons that are set forth, infra, we find no such defects in the Florida homestead tax exemption scheme.
It is an undeniable fact of life that many, if not most, laws distinguish or classify among classes of persons. See Heisler v. Thomas Colliery Co., 260 U.S. 245, 254-55, 43 S.Ct. 83, 67 L.Ed. 237 (1922); Bell's Gap R. Co. v. Pennsylvania, 134 U.S. 232, 237, 10 S.Ct. 533, 33 L.Ed. 892 (1890). "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 *204 L.Ed.2d 1 (1992) (Equal Protection Clause not violated by California property tax system in which assessed value could increase only two per cent a year except in cases of improvements or change of ownership). As a general rule, "legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Consonant with this is another rule that states generally have considerable leeway to legislate classifications and to define lines and limits that, in their considered judgment, result in reasonable taxation systems. See Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); Heisler, 260 U.S. at 255, 43 S.Ct. 83; Watson v. State Comptroller of New York, 254 U.S. 122, 124-25, 41 S.Ct. 43, 65 L.Ed. 170 (1920). As the United States Supreme Court has indicated on numerous occasions:
It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation.
Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 509, 57 S.Ct. 868, 81 L.Ed. 1245 (1937) ("This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation."); Lawrence v. State Tax Comm'n, 286 U.S. 276, 284, 52 S.Ct. 556, 76 L.Ed. 1102 (1932); Bell's Gap, 134 U.S. at 237, 10 S.Ct. 533; Rojas v. Fitch, 928 F.Supp. 155 (D.R.I.1996). The Court in Carmichael added:
Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it.
301 U.S. at 509, 57 S.Ct. 868. In light of these rules, the High Court "has been reluctant to interfere with legislative policy decisions in this area." Williams, 472 U.S. at 22, 105 S.Ct. 2465; Regan v. Taxation With Representation of Washington, 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983).
As the Florida homestead tax exemption scheme imposes no meaningful restriction upon the Reinishes' fundamental right to travel or upon any other fundamental right, the burden does not fall upon the State to show its compelling interest justifying the law. The Court's equal protection jurisprudence clearly indicates:
[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.
Nordlinger, 505 U.S. at 10, 112 S.Ct. 2326; Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439-41, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); Hooper v. Bernalillo County Assessor, 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985); New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Stated another way, a tax exemption such as the one challenged here "will be sustained if the legislature could have reasonably concluded that the challenged classification would promote a legitimate state purpose." Exxon Corp. v. Eagerton, 462 U.S. 176, 196, 103 S.Ct. 2296, 76 L.Ed.2d 497 (1983); Williams, 472 U.S. at 22-23, 105 S.Ct. 2465. The relaxed "rational basis" standard is consonant with the understanding that making distinctions is an inherent, unavoidable legislative function, see Ohio Bureau of Employment Servs. v. Hodory, 431 U.S. 471, 489, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977), and this standard is particularly deferential *205 concerning classifications made in complicated tax matters, see Nordlinger, 505 U.S. at 11, 112 S.Ct. 2326, for "in structuring internal tax schemes `the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.'" Williams, 472 U.S. at 22, 105 S.Ct. 2465, quoting Lehnhausen, 410 U.S. at 359, 93 S.Ct. 1001.
By its express terms, the constitutional provision governing the Florida homestead tax exemption applies to real estate that is maintained as the "permanent residence" of the legal or equitable titleholder or of "another legally or naturally dependent upon the owner." No more than one exemption shall be allowed to any individual or with respect to any residential unit. Art. VII, § 6, Fla. Const. (1968). The parallel statute likewise addresses only real property on which the person with legal title or beneficial title in equity, or on which another or others who are "legally or naturally dependent upon such person," resides and in good faith makes a "permanent residence."[5] § 196.031(1), Fla. Stat. (1997); Op. Att'y Gen. Fla. 82-27 (1982). The underlying classification in the exemption provisions is based primarily on the use of the property rather than on the user. Whether the person is a Florida resident or not, only one homestead exemption is allowed, irrespective of how many other residences the person owns. Thus, the exemption distinguishes between real estate used in good faith as a Florida permanent residence, on the one hand, and (by implicit exclusion) any other real estate such as secondary or vacation residences or rentals, on the other hand. In other words, the Florida exemption treats the Reinishes no differently from either Florida residents who rent, rather than own, a particular Florida real-estate parcel, or Florida residents who use Florida real property as a secondary, seasonal, or vacation residence. A property owner does not have to be a citizen of the United States to be eligible for the homestead tax exemption, and there is no durational residency requirement. See Smith v. Voight, 158 Fla. 366, 28 So.2d 426 (1946).
The New Jersey Supreme Court's lucid analysis of an equal protection challenge to the New Jersey Homestead Rebate Act in Rubin v. Glaser, 83 N.J. 299, 416 A.2d 382, app. dism., 449 U.S. 977, 101 S.Ct. 389, 66 L.Ed.2d 239 (1980), supports our conclusion that the Florida homestead tax exemption provisions do not offend equal protection guarantees. The Act in Rubin limited the homestead rebate to dwelling houses (and the land on which they were situated) owned and used by domiciliaries as their "principal residence." Id. at 383. The plaintiffs were residents of Pennsylvania who maintained their domicile there. They acquired a New Jersey vacation home, which they occupied for 4-5 weeks during the summer and intermittently at other times of the year. They admitted that they did not satisfy the statutory criteria for a tax rebate. After they were denied a rebate of real property taxes on their New Jersey summer house, they filed a claim with the local tax assessor, which was rejected. Id. Addressing their claim that the Act denied the plaintiffs equal protection, the New Jersey Supreme Court made the following threshold determination:
Denial of a homestead rebate on a vacation home does not rise to the level of a deprivation of "a basic necessity of life" or of a "fundamental" right. Furthermore, the homestead rebate is not denied to those persons, and only those *206 persons, who have exercised their constitutional right of interstate migration.... Moreover, the Act contains no residential durational element of the type which has been held invalid where the individual has been required to have resided within the state for a minimum period of time.
Id. at 387. Given this finding, the court assessed the Act under the lenient "rational relationship" test and acknowledged the "broad deference accorded legislation with respect to taxation programs." Id. The court determined that the Act represented the New Jersey legislature's "attempt to blunt escalating property taxes that threaten a family's ability to continue living in their home," and it concluded that reducing the tax burden for that basic purpose while denying relief to "less essential types of residential property ownership" fell within the ambit of legislative discretion. See id. at 388. A similar rationale supports the Florida homestead tax exemption provisions' distinction between permanent residences and other less essential types of residential property ownership.
"States are not required to convince the courts of the correctness of their legislative judgments." State of Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) (Minnesota statute banning retail sale of milk in plastic, non-returnable, non-refillable containers, but permitting such sale in other non-returnable, non-refillable containers such as paperboard milk cartons, did not violate Equal Protection Clause, where legislative classification was rationally related to achievement of statutory purposes such as fostering greater use of environmentally desirable alternatives). Instead, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." Vance v. Bradley, 440 U.S. 93, 111, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).
In attacking the validity of the homestead tax exemption, the Reinishes contend that the Florida constitutional and statutory provisions are deficient for failure to set out clearly the State purpose(s) underlying the exemption. Furthermore, they suggest that the purpose set forth by the appellee is merely an unsupported, ad hoc argument invented as a part of the litigation strategy. In determining the basis for a classification, courts sometimes must look beyond the language of the provision in question, especially where the creators of the provision have not included a clear statement of purpose for enacting or revising it. In this regard, the United States Supreme Court has stated that "the Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification." Nordlinger, 505 U.S. at 15, 112 S.Ct. 2326. Given the lack of a formal statement of purpose in the challenged provisions, we must look instead to the origins and subsequent history of the Florida homestead tax exemption to determine whether the difference in treatment between Florida permanent residences and other real estate has a "legitimate state purpose."
"The home has a history of special significance in Florida law." Osterndorf v. Turner, 426 So.2d 539, 541 (Fla.1982) (chronicling history of Florida provisions protecting homestead realty from forced sale and establishing homestead tax exemption); Donna Litman Seiden, "There's No Place Like Home(stead) in Florida-Should It Stay That Way?" 18 Nova L.Rev. 801 (1994). The current language in the Florida Constitution provides for a homestead exemption of $25,000 (of the assessed value of the homestead) from taxes levied by governing bodies. Art. VII, § 6, Fla. Const. (1968). Public policy considerations favor laws protecting the basic homestead, which "promote the stability *207 and welfare of the state by encouraging property ownership and independence on the part of the citizen and by preserving a home where the family may be sheltered and live beyond the reach of economic misfortune." Bigelow v. Dunphe, 143 Fla. 603, 197 So. 328, 330 (1940); Public Health Trust of Dade County v. Lopez, 531 So.2d 946 (Fla.1988); Collins v. Collins, 150 Fla. 374, 7 So.2d 443, 444 (1942); Law v. Law, 738 So.2d 522 (Fla. 4th DCA 1999); Myers v. Lehrer, 671 So.2d 864 (Fla. 4th DCA 1996) (recognizing purpose of homestead provision is protection of the family); George L. Haskins, "Homestead Exemptions" 63 Harv. L.Rev. 1289, 1289 (1950) ("The principle objective of the homestead laws is generally regarded as the security of the family, which in turn benefits the community to the extent that such security prevents pauperism and provides the members of the family with some measure of security and independence."). Mindful of the historic, civic, and economic significance of the need to foster and protect the primary residence of Florida homeowners, without an attendant need to give the same high level of protection to other types of residential properties, we conclude, as did the trial court, that the Florida homestead tax exemption's classification has some reasonable basis and does not offend equal protection concerns. The law-makers reasonably could have concluded that the challenged classification would promote a legitimate State purpose. Accordingly, the count based on the Equal Protection Clause was properly dismissed with prejudice.

COUNT TWO
The second count of the second amended complaint alleged that the Florida constitutional and statutory homestead tax exemption provisions unconstitutionally infringe upon the fundamental rights to travel interstate and to own property, in violation of the Privileges and Immunities Clause of Article IV, Section 2, United States Constitution.[6] The Reinishes contend that the Florida provisions discriminate impermissibly between full-time residents and part-time residents of the State and bear no rational connection to any valid concerns of the defendants.
The Privileges and Immunities Clause sets out "a norm of comity" or "substantial equality of treatment" without indicating specifically the subjects over which non-residents coming within the jurisdiction of another state are to be accorded equal treatment. See Austin v. New Hampshire, 420 U.S. 656, 660 & 665, 95 S.Ct. 1191, 43 L.Ed.2d 530 (1975). The Founding Fathers deemed it critical to unite the citizens of the various states into one union, and "it was undoubtedly the object of the clause in question to place the citizens of each state upon the same footing with citizens of other states, so far as the advantages resulting from citizenship in those states are concerned." Paul v. Virginia, 75 U.S. 168, 180, 19 L.Ed. 357 (1869).
In an early leading case, Circuit Justice Washington construed the Clause as entitling the citizens of the several states only to
those privileges and immunities which are, in their nature, fundamental; which belong, of right, to the citizens of all free governments; and which have, at all times, been enjoyed by the citizens of the several states which compose this Union, from the time of their becoming free, independent, and sovereign.
Corfield v. Coryell, 6 F. Cas. 546, 551 (C.C.E.D.Pa.1823). Justice Washington included among these "fundamental" privileges and immunities "the right of a citizen of one state ... to take, hold and dispose of property, either real or personal; and *208 an exemption from higher taxes or impositions than are paid by the other citizens of the state." Id. at 552; Ward v. Maryland, 79 U.S. 418, 430, 20 L.Ed. 449 (1870); Paul, 75 U.S. at 180 (interpreting Privileges and Immunities Clause as ensuring the citizens of one state the same freedom possessed by the citizens of another state "in the acquisition and enjoyment of property and in the pursuit of happiness"). For purposes of analysis of most cases under this Clause, the terms "resident" and "citizen" are "essentially interchangeable." United Bldg. & Constr. Trades Council of Camden County and Vicinity v. Mayor and Counsel of City of Camden, 465 U.S. 208, 216, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984). The United States Supreme Court has made it clear that especially in taxation matters, "legislatures possess the greatest freedom in classification." Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 84 L.Ed. 590 (1940). Accordingly, the Court generally has exercised a narrow review of tax classifications "to fit the broad discretion vested in the state legislatures." Austin, 420 U.S. at 662, 95 S.Ct. 1191. Even so, where a tax provision is alleged to be "an undue burden on an activity granted special constitutional recognition," the Court has indicated that "the appropriate degree of inquiry is that necessary to protect the competing constitutional value from erosion." Austin, 420 U.S. at 662, 95 S.Ct. 1191; Lehnhausen, 410 U.S. at 359, 93 S.Ct. 1001.
In determining whether the Florida homestead tax exemption scheme infringes upon rights guaranteed by the United States Constitution, we must regard substance over mere form. This requires us to consider "the operation and effect of the law as applied and enforced by the State." Lunding v. New York Tax Appeals Tribunal, 522 U.S. 287, 296, 118 S.Ct. 766, 139 L.Ed.2d 717 (1998), quoting Shaffer v. Carter, 252 U.S. 37, 55, 40 S.Ct. 221, 64 L.Ed. 445 (1920); St. Louis Southwestern R. Co. v. Arkansas, 235 U.S. 350, 362, 35 S.Ct. 99, 59 L.Ed. 265 (1914). The first step in the analysis under the Clause is to determine whether the homestead tax exemption distinguishes between Florida residents and non-residents. See Lunding, 522 U.S. at 297-98, 118 S.Ct. 766. The Reinishes assert that they are not treated substantially equally with Florida residents under the homestead tax exemption scheme because they are non-residents. In response, the appellee contends that the exemption does not discriminate against non-residents at all, i.e., no one (whether Florida resident or nonresident) receives an exemption for a home that is not used as a permanent residence. Although the Reinishes are non-residents, their Florida real property is treated the same as any vacation or seasonal homes of Florida residents, who are taxed upon the full value of those properties.[7] This result is consistent with the State's legitimate interest in assisting taxpayers/owners with the costs of their primary shelter and thereby fostering the stability of the basic homestead. Irrespective of the state of residency of their owners, secondary residences do not trigger the same public policy concerns and are not entitled to the same protection as permanent Florida residences. As a practical matter, those persons who are eligible to receive the homestead tax exemption typically will be Florida residents, for they are the taxpayers who have permanent residences in this state. However, this result does not necessarily run afoul of the Clause, for the Clause "is not an absolute." Toomer v. Witsell, 334 U.S. 385, 396, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948). The High Court has acknowledged that the United States Constitution does not preclude the States from adopting "justified and reasonable distinctions *209 between residents and nonresidents in the provision of tax benefits, whether in the form of tax deductions or tax credits." Lunding, 522 U.S. at 310, 118 S.Ct. 766. "[I]nequalities that result not from hostile discrimination, but occasionally and incidentally in the application of a[tax] system that is not arbitrary in its classification, are not sufficient to defeat the law." Maxwell v. Bugbee, 250 U.S. 525, 543, 40 S.Ct. 2, 63 L.Ed. 1124 (1919). As with welfare benefits or free public education, a State is free to grant public assistance to bona-fide residents without providing it to others who do not have permanent ties to the State. See Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 903 n. 3, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986); Martinez v. Bynum, 461 U.S. 321, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983).
If we assume arguendo that the homestead tax exemption scheme's classification of Florida permanent residences separately from other Florida properties discriminates against non-Florida residents, the second step in the analysis under the Clause would require us to determine whether the exemption provisions are prohibited "because they hinder the formation, the purpose, or the development of a single Union" of the States. See Baldwin v. Fish & Game Comm'n of Montana, 436 U.S. 371, 384, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978). "Only with respect to those `privileges and immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." Id. at 383, 98 S.Ct. 1852. The right "to take, hold and dispose of property, either real or personal; and an exemption from higher taxes or impositions than are paid by the other citizens of the state" is protected by the Clause. Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 280-81 & n. 10, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985); Baldwin, 436 U.S. at 384, 98 S.Ct. 1852; Corfield, 6 F. Cas. at 551-52.
However, at the heart of the Reinishes' challenge is their contention that the Florida exemption imposes greater financial burdens on non-residents than on residents who own Florida real property. Although the item that might or might not qualify for the homestead tax exemption, depending on its use, is real property, the crux of the Reinishes' complaint is that their current ineligibility for the exemption results from a denial of certain guarantees and protections in the Clause. Viewed from this perspective, their constitutional challenge really is based more on the denial of equal taxation than on an alleged infringement upon their right to acquire, hold, or dispose of property, for the homestead tax exemption scheme does not preclude non-residents from purchasing, enjoying, or disposing of Florida residential property.
To qualify for relief on this claim pursuant to the proper analysis set forth in the Corfield and Austin line of decisions, the Reinishes must show that non-residents' interest in an exemption from higher taxes on their secondary residence is, in the words of Circuit Justice Washington, one of those "privileges and immunities which are, in their nature, fundamental." See Corfield, 6 F. Cas. at 551.
In the context of the denial of a homestead tax exemption for a secondary or vacation residence, we find no such "fundamental" or essential right in the United States Constitution. See Baldwin, 436 U.S. at 388-90, 98 S.Ct. 1852 (because nonresidents' access on equal terms with Montana residents' access to recreational big-game hunting is not a "fundamental" right protected under Clause, elk-hunting licensing scheme that imposed substantially higher license fees upon nonresidents was not a violation of Clause); Rubin, 416 A.2d at 387 (New Jersey Act that limited tax rebate to dwelling houses and land owned and used by domiciliaries as their principal residences did not violate Privileges and Immunities Clause, for Act's applicability solely to principal residences was closely related to beneficent purpose of alleviating heavy, escalating realty tax *210 burden and was not directed against nonresidents); Baker v. Matheson, 607 P.2d 233, 247 (Utah 1979) (one-year residency requirement in Utah statute authorizing owner or renter of "primary residence" to file claim for refunds of State general fund free revenue did not render statute impermissibly discriminatory against nonresidents so as to violate Privileges and Immunities Clause); Glen A. Stankee, "Residents' Property Tax Exemptions: A Modern Analysis Under the Privileges and Immunities Clause," 59 Notre Dame L.Rev. 878 (1984).
The difference in taxation treatment between the real property of non-residents and the property of some Florida residents (those who meet the "permanent residence" requirement) is only incidentally related to state residency, and it is explained by the practical effect of a provision that was intended to provide financial assistance to owners who make the Florida property their permanent residence. The Florida homestead tax exemption was not designed to protect all types of real property, and it does not preclude non-residents from purchasing, enjoying, or disposing of Florida property. Furthermore, the exemption does not infringe upon the Clause's guarantee "that individuals may migrate between States to live and work." Lunding, 522 U.S. at 313, 118 S.Ct. 766; Saenz v. Roe, 526 U.S. 489, 119 S.Ct. 1518, 1524-27, 143 L.Ed.2d 689 (1999) (constitutional right to travel is implicated by Privileges and Immunities Clause and protects right of citizen of one state to enter and leave another state, right to be treated as "a welcome visitor rather than an unfriendly alien" when temporarily visiting another state, and right of new permanent residents to be treated like other citizens of state).
The exemption is reasonable in effect. It is closely and substantially related to the State's valid objective to promote and protect taxpayers' financial ability to purchase and maintain the primary shelter. This purpose constitutes a substantial justification totally unrelated to state residency. A secondary or vacation home does not implicate the same acute public policy concerns relating to the establishment and protection of a stable, financially secure primary residence. See Rubin, 416 A.2d at 387; Baker, 607 P.2d at 244 (noting that increased property taxes on vacation homes do not pose as great a threat to householder's standard of living as taxes or rent paid on a primary residence). The Florida exemption provides no greater, or lesser, benefit to Florida owners of secondary homes than it does to the Reinishes and any other non-residents. See Blake v. McClung, 172 U.S. 239, 252, 19 S.Ct. 165, 43 L.Ed. 432 (1898); The Slaughter-House Cases, 16 Wall. 36, 77, 21 L.Ed. 394 (1872); Paul, 75 U.S. at 168 & 180. As those nonresidents who wish to buy, keep, or dispose of Florida secondary residences are treated on terms of substantial equality with Florida residents under the challenged Florida provisions, we find no violation of a privilege or interest that is sufficiently "fundamental" to the advancement of interstate harmony, and therefore protected, under the Clause. See United Building, 465 U.S. at 218-20, 104 S.Ct. 1020; Baldwin, 436 U.S. at 383-84 & n. 20, 98 S.Ct. 1852; Toomer, 334 U.S. at 396, 68 S.Ct. 1156.
As the Reinishes have not demonstrated the denial of a right protected by the Privileges and Immunities Clause, this count was properly dismissed with prejudice.

COUNT THREE
The third and final count of the second amended complaint alleged that the constitutional and statutory homestead tax exemption provisions constitute a per se violation of the "dormant" Commerce Clause in Article I, Section 8, United States Constitution,[8] in that they attempt *211 to create customs duties, barriers, or taxes that discriminate against and unduly burden interstate commerce and impermissibly impose a tariff on citizens whose primary residence is located outside Florida. As "[t]he states are not separable economic units," H.P. Hood & Sons, Inc. v. Du Mond, 336 U.S. 525, 537-38, 69 S.Ct. 657, 93 L.Ed. 865 (1949), underlying the Clause is "the principle that one state in its dealings with another may not place itself in a position of economic isolation." Baldwin v. G.A.F. Seelig, Inc., 294 U.S. 511, 527, 55 S.Ct. 497, 79 L.Ed. 1032 (1935).
The "dormant" Commerce Clause case law of the United States Supreme Court essentially has allowed a presumption that state legislation is intended to regulate local activities under the police power. However, exceptions are recognized in two main instances. See generally Thomas W. Merrill, "Toward a Principled Interpretation of the Commerce Clause," 22 Harv. J.L. & Pub. Pol'y 31, 40-41 & nn. 34-37 (1998).
The first step in assessing whether a state or local regulation violates the Clause involves the determination of whether the regulation treats out-of-state commerce differently. See Fulton Corp. v. Faulkner, 516 U.S. 325, 331, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996); Toomer, 334 U.S. at 394, 68 S.Ct. 1156; Welton v. Missouri, 91 U.S. 275, 280, 23 L.Ed. 347 (1876) (noting one of fundamental purposes of Clause was "to insure ... against discriminating State legislation"). "Discrimination" refers to differential treatment, see Oregon Waste Systs., 511 U.S. at 99, 114 S.Ct. 1345, such as where a regulation places a greater economic burden on those outside the state, with an attendant economic advantage to those within the state. See South Carolina State Highway Department v. Barnwell Brothers, Inc., 303 U.S. 177, 184-86 & n. 2, 58 S.Ct. 510, 82 L.Ed. 734 (1938). If, for example, a state tax is found to discriminate against interstate commerce, usually it will be stricken as a violation of the Clause, without additional inquiry. See Chemical Waste Management, Inc. v. Hunt, 504 U.S. 334, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992). This is because if the legislation discriminates against interstate commerce, it very likely is undergirded by an impermissible motive. Where a state or local law is discriminatory, then the presumption that the intent of the law is permissible is reversed, and the State or the local entity must demonstrate that it has a strong, legitimate local concern that warrants the discrimination. See Maine v. Taylor, 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986); Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 353, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).
Even where a regulation is not per se discriminatory, the court must decide whether the regulation substantially burdens interstate commerce while the local benefits appear insubstantial. See Edgar v. MITE Corp., 457 U.S. 624, 646, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982); Raymond Motor Trans., Inc. v. Rice, 434 U.S. 429, 447, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978). If the burden on interstate commerce clearly outweighs the regulation's *212 potential benefits, then the regulation will be found deficient. See C & A Carbone, Inc. v. Clarkstown, 511 U.S. 383, 390, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994).
The dormant aspect of the Clause provides protection for persons, not just for goods, that move across state borders; it is immaterial whether the transportation is of a commercial or profit-making nature. See Camps Newfound/Owatonna, Inc. v. Town of Harrison, Maine, 520 U.S. 564, 573, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997); Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 268 n. 8, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) ("[D]iscrimination between in-state and out-of-state goods is as offensive to the Commerce Clause as discrimination between in-state and out-of-state taxpayers."); Edwards v. California, 314 U.S. 160, 172 & n. 1, 62 S.Ct. 164, 86 L.Ed. 119 (1941) (invalidating, as unconstitutional barrier to interstate commerce, California statute that prohibited knowingly "bringing into the State any indigent person who is not a resident of the State"). The dormant aspect of the Clause covers and protects "markets and participants in markets," Tracy, 519 U.S. at 300, 117 S.Ct. 811, including those engaged in competition for real natural resources such as real estate. See New England Power Co. v. New Hampshire, 455 U.S. 331, 338, 102 S.Ct. 1096, 71 L.Ed.2d 188 (1982) (Clause "precludes a state from mandating that its residents be given a preferred right of access, over out-of-state consumers, to natural resources located within its borders or to the products derived therefrom."); McLain v. Real Estate Bd. of New Orleans, 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); Philadelphia v. New Jersey, 437 U.S. 617, 627, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978). "A tax on real estate, like any other tax, may impermissibly burden interstate commerce," and the fact "[t]hat the tax discrimination comes in the form of a deprivation of a generally available tax benefit, rather than a specific penalty on the activity itself, is of no moment." Camps Newfound/Owatonna, 520 U.S. at 574 & 578-79, 117 S.Ct. 1590; New Energy Co. of Indiana v. Limbach, 486 U.S. 269, 274, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988) (invalidating Ohio statute that provided tax credit for sales of ethanol produced in-state, but not ethanol produced in certain other states). "[W]here simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected." Philadelphia, 437 U.S. at 624, 98 S.Ct. 2531; Chemical Waste Management, 504 U.S. at 342, 112 S.Ct. 2009. "A finding that state legislation constitutes `economic protectionism' may be made on the basis of either discriminatory purpose ... or discriminatory effect." Bacchus Imports, 468 U.S. at 270-71, 104 S.Ct. 3049 (Hawaii liquor tax exemption for pineapple wine and for brandy distilled from root of indigenous shrub violated Clause in that it had discriminatory purpose of aiding Hawaii liquor industry and clearly discriminatory effect of applying only to locally produced alcoholic beverages); Clover Leaf Creamery, 449 U.S. at 471 & n. 15, 101 S.Ct. 715; Hunt, 432 U.S. at 352-53, 97 S.Ct. 2434 (North Carolina statute that effectively prohibited display of Washington State apple grades on closed containers shipped into North Carolina burdened interstate sales of Washington State apples, which were subject to expensive inspection and grading system in Washington, and had discriminatory effect upon them, shielding North Carolina apple growers/dealers and leaving them unaffected, in violation of Commerce Clause).
If the homestead tax exemption fails the first step of the two-part test, then it violates the Clause and our inquiry ends. However, even if the challenged provisions are not per se discriminatory, the second step of the analysis requires us to determine whether the exemption scheme places a burden on interstate commerce that clearly outweighs its possible benefits. See C & A Carbone, 511 U.S. at 390, 114 S.Ct. 1677. "[W]here other legislative objectives are credibly advanced and there is *213 no patent discrimination against interstate trade, the Court has adopted a much more flexible approach." Philadelphia, 437 U.S. at 624, 98 S.Ct. 2531. This approach was described in Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970):
Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.... If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.
The Reinishes assert that while they (and the class they seek to represent) are engaged in direct economic competition with Florida residents for the purchase of real estate, the challenged exemption affords those persons who establish a Florida permanent residence a clear and continuing economic advantage over non-residents. First, eligible property is subject to an exclusion of the first $25,000 from ad valorem taxes. Second, any future increases in the assessed value of eligible property are limited to three per cent annually. Art. VII, § 4, Fla. Const.; § 193.155, Fla. Stat. (1997).
To support their argument that the Florida homestead tax exemption directly discriminates against non-resident consumers of Florida real estate, the Reinishes expressly rely on Camps Newfound/Owatonna, 520 U.S. at 564, 117 S.Ct. 1590. The Maine statute at issue in that case provided a general exemption from real estate and personal property taxes for "benevolent and charitable institutions incorporated" by the State. With regard to institutions that were "in fact conducted or operated principally for the benefit of persons who are not residents of Maine," a charity could qualify only for a more limited tax benefit, and then only if the weekly charge for services provided did not exceed $30 per person. See id. at 568 & n. 2, 117 S.Ct. 1590. Because most of their campers came from out of state, the petitioners (non-profit summer camps) could not qualify for a total exemption; with a weekly tuition of about $400, they were ineligible for any charitable tax exemption at all. See id. at 568-69, 117 S.Ct. 1590. For purposes of analysis under the Clause, the United States Supreme Court noted that the camps'"product" comprised the natural beauty of Maine as well as the special services provided by the camps. See id. at 576-77, 117 S.Ct. 1590. From the face of the statute, the High Court concluded that the law discriminated against interstate commerce in that it expressly distinguished entities that served mainly interstate clients from those that catered primarily to an intrastate market, and then it singled out camps that served principally Maine residents for beneficial tax treatment while it penalized other camps, which conducted mostly interstate business. See id. at 575-76, 117 S.Ct. 1590. The statute included "a strong incentive for affected entities not to do business with nonresidents if they [were] able to do so to avoid the discriminatory tax." Id. at 578, 117 S.Ct. 1590. As the burden of the facially discriminatory tax scheme "[fell] by design in a predictably disproportionate way on out-of-staters [footnote omitted], the pernicious effect on interstate commerce" was found to be "the same as in ... cases involving taxes targeting out-of-staters alone." Id. at 579-80, 117 S.Ct. 1590. Likening the Maine statute to an export tariff in terms of its function, the Court observed: "By encouraging economic isolationism, prohibitions on out-of-state access to in-state resources serve the very evil that the dormant Commerce Clause was designed to prevent." Id. at 578 & 580-81, 117 S.Ct. 1590. Applying strict scrutiny, rather than a more *214 deferential standard, because the statute was found to be facially discriminatory, the Court held the statute to be invalid and reversed the judgment of the Maine Supreme Judicial Court. See id. at 581-82, n. 16, & 595, 117 S.Ct. 1590.
The instant trial court found that Camps Newfound/Owatonna is not applicable to the type of tax exemption scheme involved in the case at bar. Having carefully reviewed the facts in that case, we concur with the lower tribunal's determination that the facts in Camps Newfound/Owatonna are clearly distinguishable from the circumstances presented in the Florida homestead tax exemption provisions.
In analyzing the challenge to the state statute on Commerce Clause grounds in Philadelphia, the United States Supreme Court recognized that the essential inquiry must be whether the challenged provision "is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." 437 U.S. at 624, 98 S.Ct. 2531. A determination that a state regulation constitutes impermissible "economic protectionism" can be made based on either 1) a "discriminatory purpose," as was true of the Massachusetts pricing order, which had an "avowed purpose ... to enable Massachusetts dairy farmers to compete with lower cost dairy farmers in other States," in West Lynn Creamery, 512 U.S. at 194, 114 S.Ct. 2205; or 2) a "discriminatory effect," as was found in the North Carolina statutory restrictions upon grading apples in incoming closed containers in Hunt, 432 U.S. at 350-52, 97 S.Ct. 2434. See Bacchus Imports, 468 U.S. at 270, 104 S.Ct. 3049.
Addressing the first stage of the two-part analysis in Commerce Clause challenges, we conclude that the homestead tax exemption is not per se discriminatory against interstate commerce, for the provisions do not treat local and interstate commerce differently. We can discern neither a discriminatory purpose underlying the exemption nor an improper discriminatory effect on non-residents. In Camps Newfound/Owatonna, the exemption was facially discriminatory because it disparately treated identically positioned Maine non-profit camps depending on whether they favored in-state, rather than out-of-state, campers. See 520 U.S. at 582 n. 16, 117 S.Ct. 1590. In contrast, the Florida homestead tax exemption neither distinguishes between Florida residents and non-residents nor disparately treats identically situated persons. The focus of the exemption is on the use of the property itself, and not on the user. Entitlement to the exemption hinges upon whether the property is used as the "permanent residence." We cannot find any reasonable basis to support the Reinishes' claim that the exemption discriminates against interstate commerce. The historical justification of the homestead tax exemption is the protection of the home, a legitimate governmental purpose.
Although a foreign decision lacks precedential value, we find both instructive and useful the well-reasoned analysis set forth by the Appellate Court of Illinois in Stahl v. Village of Hoffman Estates, 296 Ill. App.3d 550, 230 Ill.Dec. 824, 694 N.E.2d 1102 (1998). Under a 1987 ordinance adopted by the Village of Hoffman Estates, Illinois, the grantor of a deed conveying Village real property would incur transfer tax liability. In 1990, the Village raised the tax to $3.00 for every $1,000 valuation. However, the ordinance provided an exemption from payment of the tax for a grantor who had lived on the property for a year if he or she bought another residence in the Village within a certain period of time. Mr. Stahl and the other plaintiffs sold their homes in the Village and elected to move to places other than the Village, thereby incurring transfer tax liability. They joined in a constitutional attack upon the transfer tax and its exemption alleging, among other grounds, that it violated the Commerce Clause. Finding no violations of either the United *215 States or Illinois Constitutions, the trial court granted the Village's motion to dismiss the suit. See id., 230 Ill.Dec. 824, 694 N.E.2d at 1103-05.
Stahl and the other appellants conceded that the exemption did not substantially burden interstate commerce. Instead, they focused on the first step of the Commerce Clause analysis, alleging that the exemption facially discriminated against interstate commerce. The appellate panel noted that the exemption did not disproportionately burden non-residents, nor did it distinguish between residents of the Village and residents of another State. Rather, it differentiated between Village residents who sold their home and chose to repurchase a home in the Village, on the one hand, and Village resident sellers who elected to purchase a home anywhere else, on the other hand. The court noted that the "product"___the real estate___"cannot travel in interstate commerce." Id., 230 Ill.Dec. 824, 694 N.E.2d at 1106. The appellants were not engaged in interstate commerce, and no interstate commerce activity was alleged to have increased the appellants' tax burden. See id., 230 Ill. Dec. 824, 694 N.E.2d at 1107. The panel stated:
The ordinance, with its exemption, does not impose a tax on people who leave the Village. It rewards the people who stay. In that way the Village promotes stability and continuity. That is a legitimate local purpose.
Id. Given these considerations, the court found no reason why the decision to leave the Village and, thus, to forego the tax exemption could be said to violate the Commerce Clause. The order of dismissal was affirmed. See id., 230 Ill.Dec. 824, 694 N.E.2d at 1107-8.
Having found no facial discrimination against interstate commerce, we look to the second stage of the analysis under the Clause to determine whether the Florida homestead tax exemption imposes a burden on interstate commerce that clearly outweighs its potential benefits. See C & A Carbone, 511 U.S. at 390, 114 S.Ct. 1677; Pike, 397 U.S. at 142, 90 S.Ct. 844; Mary Lafrance, "Constitutional Implications of Acquisition-Value Real Property Taxation: Assessing the Burdens on Travel and Commerce," 1994 Utah L.Rev. 1027 (1994). The High Court in Camps Newfound/Owatonna stated that "[a] tax on real estate, like any other tax, may impermissibly burden interstate commerce." 520 U.S. at 574, 117 S.Ct. 1590. As enunciated in Pike and Philadelphia, this step involves "a much more flexible approach" than the preliminary step. 437 U.S. at 624, 98 S.Ct. 2531. We conclude that the Florida exemption is an even-handed regulation that promotes the legitimate, strong public interest in promoting the stability and continuity of the primary permanent home. The Reinishes have not shown either that the effects of the exemption upon interstate commerce are anything more than incidental, or that the burden imposed on such commerce is clearly excessive when compared to the asserted local benefits. Under these circumstances, the Court's criteria in Pike for upholding the regulation are met. Accordingly, we find that the count based on the "dormant" Commerce Clause was properly dismissed with prejudice.
The final order dismissing the Reinishes' second amended complaint with prejudice is AFFIRMED.
ALLEN, J., concurs; BENTON, J., concurs with opinion.
BENTON, J., concurring.
I concur in the court's judgment and join Judge Browning's scholarly opinion except to the extent it endorses the result reached in Stahl v. Village of Hoffman Estates, 296 Ill.App.3d 550, 230 Ill.Dec. 824, 694 N.E.2d 1102 (1998).
NOTES
[1] Art. VII, § 6, Fla. Const.
[2] Section 196.031, Fla. Stat. (1997).
[3] Venue in this case was transferred from Palm Beach County to Leon County.
[4] The Clause mandates that no state shall "deny to any person within its jurisdiction the equal protection of the laws." Art. XIV, § 1, U.S. Const.
[5] "`Permanent resident' means a person who has established a permanent residence as defined in subsection (18)." § 196.012(17), Fla. Stat. (1997). "`Permanent residence' means that place where a person has his or her true, fixed, and permanent home and principal establishment to which, whenever absent, he or she has the intention of returning. A person may have only one permanent residence at a time; and, once a permanent residence is established in a foreign state or country, it is presumed to continue until the person shows that a change has occurred." § 196.012(18), Fla. Stat.
[6] This Clause states, in pertinent part: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." Art. IV, § 2, Clause 1, U.S. Const. This provision is separate and distinct from the "privileges or immunities" provision in Article XIV, section 1, United States Constitution.
[7] We note that the mere fact that the Florida homestead tax exemption disadvantages some Florida residents too does not necessarily immunize the provisions from constitutional review in a challenge by similarly disadvantaged non-residents. See United Building, 465 U.S. at 217-18, 104 S.Ct. 1020.
[8] The Commerce Clause states, in pertinent part: "The Congress shall have power to ... regulate Commerce with foreign Nations, and among the several States." Art. I, § 8, cl. 3, U.S. Const. In one respect, the Clause constitutes an affirmative grant of power to Congress. The Clause also has a negative or dormant aspect, which severely limits the extent to which the States or local governments can discriminate against, unduly burden, tax, or otherwise interfere with interstate commerce or engage in economic isolationism, even in the absence of an exercise of Congress' affirmative power. See General Motors Corp. v. Tracy, 519 U.S. 278, 287, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997); West Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 192, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994) (negative aspect of Commerce Clause bans economic protectionism, i.e., "measures designed to benefit in-state economic interests by burdening out-of-state competitors"); Oregon Waste Sys., Inc. v. Dep't of Env. Quality, 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994); Quill Corp. v. North Dakota, 504 U.S. 298, 309, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992); Hughes v. Oklahoma, 441 U.S. 322, 336, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979).