Ronald F. STANEK, Appellant,

v.

KENAI PENINSULA BOROUGH,
Appellee.

No. S–10566.

Supreme Court of Alaska.

Dec. 5, 2003.

Robert D. Stone, Anchorage, for Appellant.

Collette Thompson, Borough Attorney, Soldotna, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

An ordinance of the Kenai Peninsula Borough excludes from taxation $10,000 of the value of residential property used as the owner's permanent residence. An Anchorage resident who owns a second home in the Borough challenges the ordinance, contending mainly that it illegally discriminates against Borough nonresidents. We uphold the ordinance because it discriminates on the basis of property use, treating resident and nonresident owners of second homes alike, and because this discrimination is legitimate.

## II. FACTS AND PROCEEDINGS

Ronald Stanek owns a second home that he uses for recreational purposes in the Kenai Peninsula Borough. He is an Anchorage resident. Kenai Borough Ordinance (KPB) 5.12.115 exempts from taxation the first $10,000 of residential property used as the owner's permanent place of residence.[1] Implementing regulations define "permanent place of residence" as "that place where a person has his true, fixed and permanent home and to which, after any temporary absence, the person has the intention to, and will return." Stanek is not eligible for this exemption because his Kenai house is not his permanent place of residence.

Stanek sued the Borough, challenging the ordinance on constitutional and statutory grounds. Specifically, he claimed that the ordinance violated constitutional guarantees of equal protection; the right to travel; AS 29.45.050, which permits municipalities to ex-

---

1. KPB 5.12.115 states:
   A. The first $10,000 of assessed valuation of a single parcel of residential real property owned and occupied by the owner of record as the owner's permanent place of residence in the borough, shall be exempt from the borough tax levy on real property within the Kenai Peninsula Borough.
   The assessor may presume that the property has not been occupied as the owner of record's primary residence and permanent place of abode, if the owner of record occupied it for less than 183 days during the previous year. If the current owner of record can provide the assessor with satisfactory evidence that the lack of occupancy was for medical reasons, the exemption may be granted.
   The second paragraph was added in 1998.

empt $10,000 of residential property; and AS 29.45.110, which requires property to be assessed at its full and true value. Both parties moved for summary judgment. The superior court granted the Borough's motion and Stanek appeals.

## III. DISCUSSION

### A. Standard of Review

■ Only issues of law are involved in this case. We review issues of law exercising our independent judgment.[2]

### B. The Exemption Does Not Violate Equal Protection.

■ Stanek argues that the tax exemption discriminates between otherwise similarly situated taxpayers on account of their borough residency. He argues that this discrimination violates the Equal Rights Clause of the Alaska Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

We address at the outset Stanek's state constitutional challenge. The Alaska Constitution provides that all persons are "entitled to equal rights, opportunities, and protection under the law."[3] In *Gonzales v. Safeway Stores, Inc.,*[4] we summarized our general approach to claims that the equal rights clause has been violated:

> The constitutional right to equal protection is a command to state and local governments to treat those who are similarly situated alike. The common question in equal protection cases is whether two groups of people who are treated differently are similarly situated and thus entitled to equal treatment. Equal protection jurisprudence concerns itself largely with the reasons for treating one group differently from another. In reviewing equal protection claims we view the enactment in question as creating, by its differential treatment, separate groups. . . . This separation by different legal treatment is referred to as a "classification." We ordinarily review

a classification under Alaska's equal rights clause by asking whether a legitimate reason for disparate treatment exists, and, given a legitimate reason, whether the enactment creating the classification bears a fair and substantial relationship to that reason.[7]

[7] However, when a classification is based on a suspect factor such as race, the question is much more demanding: is there a "compelling" reason for the classification, and if so, is the enactment narrowly designed to bring about its goal? This is commonly referred to as strict scrutiny. Additionally, under federal equal protection analysis, there are quasi-suspect factors such as gender and illegitimacy where the inquiry is whether the purpose of the enactment is "important" and whether the enactment bears a substantial relationship to the accomplishment of its purpose. This is usually referred to as intermediate scrutiny. Under this court's equal protection analysis we use a "sliding scale" between strict scrutiny and the most tolerant "legitimate reason" test. "As the right asserted becomes 'more fundamental' or the classification scheme employed becomes 'more constitutionally suspect,' the challenged law 'is subjected to more rigorous scrutiny at a more elevated position on our sliding scale.'" We have, however, in the sixteen years since the sliding scale approach was first formulated . . . only identified three stops on the sliding scale—at the relaxed, intermediate, and strict levels of scrutiny.[5]

■ The classification in this case pertains to economic interests and does not involve suspect or quasi-suspect classifications. We thus apply the most tolerant "legitimate reason" test. "[F]reedom from disparate taxation[ ] lies at the low end of the continuum of interests protected by the equal protection

---

2. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

3. Alaska Const. art. I, § 1.

4. 882 P.2d 389, 396 (Alaska 1994).

5. *Id.* at 396 (citations omitted).

clause." [6]

Stanek argues that the classification created by the ordinance is between nonresidents of the borough who own residences in the borough, and residents of the borough who own residences in the borough. The Borough takes issue with this. It contends that borough residents who own both first and second homes in the borough are treated as Stanek is treated because their second homes do not receive the $10,000 exemption. The distinction, the Borough argues, is based on the use of property as a primary home, not the residency of the owner.

We conclude that the Borough is correct. The actual classification that is created by the ordinance is between owners of owner-occupied primary residences in the borough and owners of second homes or other types of real property in the borough.

As to this classification, we must ask whether there is a legitimate reason for the disparate treatment. We conclude that the answer is affirmative. The exemption is evidently designed to protect and promote home ownership. Home ownership is widely thought to be beneficial to a community because it promotes stability, a sense of commitment to the community, civic responsibility, and a measure of financial independence.[7] These are unquestionably legitimate goals. They can reasonably be perceived to be more strongly inherent in owner-occupied home ownership than in ownership of second homes or other real estate.[8] Further, the tax exemption makes home ownership less expensive than it otherwise would be and thus bears a fair and substantial relationship to promoting home ownership. We therefore conclude that the ordinance does not violate the equal rights clause of the Alaska Constitution.

Other courts considering like programs have reached the same conclusions. In *Reinish v. Clark,* a Florida intermediate appellate court upheld a state statute that exempted the first $25,000 of property used as a permanent residence. The exemption was reviewed using minimum scrutiny:

> The underlying classification in the exemption provisions is based primarily on the *use* of the property rather than the *user.* ... [T]he Florida exemption treats the [plaintiffs] no differently from either Florida residents who rent, rather than own, ... or Florida residents who use Florida real property as a secondary, seasonal, or vacation residence.[9]

Mindful of the historic, civic, and economic significance of the need to foster and protect the primary residence of Florida homeowners, without an attendant need to give the same high level of protection to other types of residential properties, we conclude ... that the Florida homestead tax exemption's classification has some reasonable basis and does not offend equal protection concerns. The law-makers reasonably could have concluded that the challenged classification would promote a legitimate State purpose.[10]

Similarly, a New York intermediate appellate court in *Markham v. Comstock* upheld a state tax exemption on primary residences, noting that it did "not favor New York residents over nonresidents. Rather, it distinguishes between property that serves as an owner's primary residence and property that does not and is unavailable with respect to property that is not the owner's primary residence whether the owner is a New York

---

**6.** *Matanuska–Susitna Borough Sch. Dist. v. State,* 931 P.2d 391, 398 (Alaska 1997) (quoting *Atl. Richfield Co. v. State,* 705 P.2d 418, 437 (Alaska 1985)).

**7.** Federal programs encourage home ownership. *See, e.g.,* 12 U.S.C. § 1715l (2003). Tax exemptions for primary residences "promote the stability and welfare of the state by encouraging property ownership and independence on the part of the citizen and by preserving a home where the family may be sheltered and live beyond the reach of economic misfortune." *Reinish v.*

*Clark,* 765 So.2d 197, 206–07 (Fla.App.2000) (quoting *Bigelow v. Dunphe,* 143 Fla. 603, 197 So. 328, 330 (1940)).

**8.** *Reinish,* 765 So.2d at 208 ("[S]econdary residences do not trigger the same public policy concerns and are not entitled to the same protection as permanent ... residences.").

**9.** *Id.* at 205 (emphasis in original).

**10.** *Id.* at 207.

resident or not." [11] Further, the court found that the exemption "is rationally related to the State's legitimate interest in protecting and promoting the ownership of property that serves as primary residences, and furthers that interest by relieving the real estate tax burden on such ownership." [12]

To the same effect is *Citizens for Uniform Taxation v. Northport Public School District,* where a Michigan appellate court stated:

> the statute does not distinguish between residents and nonresidents. Instead, the statute distinguishes between property that qualifies as homestead property and property that does not. Section 1211 treats nonresidents who own property that does not qualify as homestead property exactly the same as Michigan residents who own property that does not qualify as homestead property, neither are eligible for the homestead exemption.[13]

As a subset of his equal protection argument, Stanek argues that we should presume that the ordinance in question was created with a discriminatory intent. The ordinance was passed by initiative in 1978. The Borough apparently no longer possesses the initiative petition or other documents that might show the motives of the initiative sponsors. Under this circumstance Stanek contends that we should apply a spoliation remedy. In tort law when a party has destroyed records, it is sometimes appropriate to employ a rebuttable presumption that the records would have established facts unfavorable to the party who destroyed the documents.[14]

We regard the argument as without merit. We are unaware of any case that has applied a spoliation remedy in a public law context.

Moreover, Stanek has not shown that other sources, such as newspaper archives, do not show the impetus for this initiative. Most importantly, while it is easy to imagine that the initiative might have been promoted to lessen the tax burden on local home owners, as distinct from nonresidents who own second homes, this would be merely a popular way of stating that it is designed to promote owner-occupied home ownership. This would not detract from the legitimacy of that objective.

Since analysis of equal protection claims under the federal constitution is, if anything, more forgiving than the approach we use under the Equal Rights Clause of the Alaska Constitution, it follows from our conclusion that the state Equal Rights Clause is not violated, that the federal Equal Protection Clause is also not violated.[15]

## C. The Right To Travel

The second paragraph of KPB 5.12.115(A) provides that if the owner of record occupied the residence for less than 183 days during the previous year the borough assessor may presume that the property has not been occupied as the owner's primary place of residence. Stanek challenges this provision as an unjustified durational residency requirement that violates the right to travel as recognized by the federal and state constitutions.

We have recognized that there is a right to inter-state or intra-state travel that may be impinged "when a governmental entity creates distinctions between residents based upon the duration of their residency." [16] Not all durational residency require-

---

11. 272 A.D.2d 971, 973, 708 N.Y.S.2d 674 (2000) (citation omitted).

12. *Id.*

13. 239 Mich.App. 284, 608 N.W.2d 480, 483 (2000).

14. *See Sweet v. Sisters of Providence in Washington,* 895 P.2d 484, 492 (Alaska 1995).

15. "Minimal scrutiny under our state constitution may be more demanding than under the federal constitution. As under the federal consti-

tution, the challenged exclusion must be designed to achieve a 'legitimate' governmental objective; however, the exclusion must bear a 'fair and substantial' relationship to the accomplishment of the legitimate objective" under state law whereas the relationship under federal law need only be "rational." *State, Dep't of Revenue, Permanent Fund Dividend Div. v. Cosio,* 858 P.2d 621, 629 & n. 11 (Alaska 1993).

16. *Gilman v. Martin,* 662 P.2d 120, 125 (Alaska 1983).

ments trigger heightened scrutiny.[17] In order to determine what level of scrutiny should be applied, a test is used that "balances the nature and extent of the infringement on this right caused by the classification against the state's purpose in enacting the statute and the fairness and substantiality of the relationship between that purpose and the classification." [18]

But in this case we need not decide what level of scrutiny the ordinance's 183–day presumptive period should receive, or whether the ordinance violates the right to travel. Stanek lacks standing to bring a right to travel challenge because his house in the borough is not by any measure his permanent place of residence. Since Stanek does not use his borough home as his primary residence, the 183–day presumptive period is irrelevant to him. Only if he were to move into the house with an intention to make it his permanent place of abode would the 183–day clock begin to tick. Stanek has no personal stake in the constitutionality of the 183–day presumptive period. Thus he lacks standing to challenge it.[19]

### D.  Statutory Arguments

Alaska Statute 29.45.050 authorizes municipalities to exempt residential property from taxation in an amount not to exceed the assessed value of $10,000. Alaska Statute 29.45.050(a) provides:

> A municipality may exclude or exempt or partially exempt residential property from taxation by ordinance ratified by the voters at an election. An exclusion or exemption authorized by this section may

not exceed the assessed value of the $10,000 for any one residence.

Alaska Statute 29.45.110(a) requires that "[t]he assessor shall assess property at its full and true value as of January 1 of the assessment year . . . ."

■   Stanek argues that the ordinance violates AS 29.45.050 because the statutory exemptions are exclusive and the Borough has "exceeded the limitations set forth in AS 29.45.050 by providing property tax exemptions to Kenai Peninsula Borough residents outside of the exceptions set forth in AS 29.45.050."

The premise of Stanek's argument that the statutory exemptions mentioned in AS 29.45.050(a)-(r) are exclusive appears to be sound and is not challenged by the Borough. But the Borough argues that the ordinance merely defines "residential property" as used in AS 29.45.050(a) and that it has the implied power to give a narrow but reasonable meaning to the statutory term. We agree with the Borough's argument.

The term "residential property" as used in the statute requires definition. The definition imposed by the ordinance—basically that residential property means the owner's primary residence—is a narrow but reasonable interpretation of the statute. Article X, section 1 of the Alaska Constitution mandates that a liberal construction be given to the powers of local government[20] and this applies to the taxing authority of local governments.[21] The themes of liberal construction and broad local powers are also expressed statutorily in AS 29.35.400 and .410.[22] We

17.  *Church v. State, Dep't of Revenue,* 973 P.2d 1125, 1131 (Alaska 1999).

18.  *Id.* (quoting *Alaska Pac. Assurance Co. v. Brown,* 687 P.2d 264, 271 n. 10 (Alaska 1984)).

19.  *See Hoblit v. Comm'r of Natural Res.,* 678 P.2d 1337, 1340 (Alaska 1984) (stating that a party has standing to obtain judicial resolution only when he has "a sufficient 'personal stake' in the outcome of the controversy to ensure the requisite adversity").

20.  Art. X, § 1 provides:
    The purpose of this article is to provide for maximum local self-government with a minimum of local government units, and to prevent

duplication of tax-levying jurisdictions. A liberal construction shall be given to the powers of local government units.

21.  *Liberati v. Bristol Bay Borough,* 584 P.2d 1115, 1120 (Alaska 1978).

22.  AS 29.35.400 provides:
    A liberal construction shall be given to all powers and functions of a municipality conferred in this title.
    AS 29.35.410 provides:
    Unless otherwise limited by law, a municipality has and may exercise all powers and functions necessarily or fairly implied in or incident to the purpose of all powers and functions conferred in this title.

have also observed that tax exemptions should be narrowly construed to the end that "disturb[ances] to ... that equality in the distribution of this common burden upon all property which is the object and aim of every just system of taxation" be minimized.[23]

Considering all these factors we conclude that the Borough had the power to define the statutory term "residential property" as it did. We thus conclude that the Borough ordinance is authorized by AS 29.45.050(a) and does not violate that subsection.

Stanek also argues that the ordinance violates AS 29.45.110 which commands that property be assessed at its full and true value. This argument also lacks merit. The ordinance does not conflict with the statute. It does not require that residential property be assessed for less than full and true value. By requiring the equal assessment of property AS 29.45.110 implies an equal taxation goal. Accepting that equal taxation is a goal of section .110, this goal is necessarily subject to tax exemptions that are authorized by statute.[24] As we have seen, the exemption in this case is authorized by statute. Therefore Stanek's argument that section .110 bars the exemption fails.

## IV. CONCLUSION

The decision of the superior court is AFFIRMED.

**23.** *Greater Anchorage Area Borough v. Sisters of Charity of the House of Providence,* 553 P.2d 467, 469 (Alaska 1976) (quoting *Animal Rescue League of Boston v. Bourne's Assessors,* 310 Mass. 330, 37 N.E.2d 1019, 1021 (1941)).

**24.** Article IX, section 4 of the Alaska Constitution provides that tax exemptions of real property may be granted by law:
    The real and personal property of the State or its political subdivisions shall be exempt from taxation under conditions and exceptions which may be provided by law. All, or any portion of, property used exclusively for non-profit religious, charitable, cemetery, or educational purposes, as defined by law, shall be exempt from taxation. *Other exemptions of like or different kind may be granted by general law.* All valid existing exemptions shall be retained until otherwise provided by law.
(Emphasis added.)