CARNEY, Justice.
*946 I. INTRODUCTION
In 2013 and 2014 attorney Gerald Markham applied for a senior citizen tax exemption on his residential property in Kodiak. The Borough assessor denied the applications due to Markham's prolonged absences from Alaska. When given the opportunity to prove his absences were allowed under the applicable ordinance, Markham refused to provide corroborating documentation. He appealed the denials to the Borough Board of Equalization, which affirmed the denials. He appealed the Board's decisions to the superior court. The superior court dismissed the 2013 appeal for failure to prosecute, denied the 2014 appeal on the merits, and awarded attorney's fees to the Borough. Markham appeals. We affirm the superior court's 2013 dismissal and the Board's 2014 denial on the merits, but vacate the superior court's award of attorney's fees and remand for further findings.
II. FACTS AND PROCEEDINGS
A. Kodiak Island Borough's Property Tax Exemption For Senior Citizens
The Alaska legislature has enacted a mandatory property tax exemption for residents who are older than 65.[1] This exemption provides that "real property owned and occupied as the primary residence and permanent place of abode by a resident who is ... 65 years of age or older ... is exempt from taxation on the first $ 150,000 of the assessed value of the real property."[2] The statute allows a municipality to determine eligibility for the exemption by requiring that an individual meet the eligibility requirements of the Permanent Fund Dividend (PFD) program.[3] The Kodiak Island Borough passed an ordinance incorporating the PFD eligibility criteria into its eligibility criteria for the property tax exemption.[4]
An individual applying for a PFD who is not physically present in Alaska during the qualifying year must prove that the absence was allowed by statute.[5] Alaska Statute 43.23.008(a) lists the allowable absences, including: providing medical care to certain family members "with a critical life-threatening illness" who must travel out of state to receive doctor-recommended treatment;[6] "accompanying another eligible resident who is absent for a reason permitted [by the statute];"[7] and "for any reason consistent with the individual's intent to remain a state resident, provided the absence or cumulative absences do not exceed ... 45 days in addition to any absence or cumulative absences" claimed under the statute.[8]
Gerald Markham has been an attorney since 1972. In 2013 and 2014, Markham - then over the age of 65 - applied for a property tax exemption from the Kodiak Island Borough for a home he owns in the Borough. Markham also owns a home in Anchorage, two homes in Washington - one of which has been Markham's contact address throughout this litigation - and a home in Arizona.
On his 2013 application Markham noted that the last time he received a PFD was in *947 2004. On his 2014 application he noted that he did not qualify for the PFD and did not intend to apply for it. The Borough assessor denied the 2013 application because Markham had not provided "persuasive evidence" that, even though he had not applied for a PFD, he still met its eligibility criteria and would therefore qualify for the tax exemption. The denial letter invited him to provide additional documentation if he wished to have the decision reconsidered. In 2014 the assessor again offered him the opportunity to provide additional documentation to prove his eligibility. The 2014 letter did not explicitly deny Markham's application, but reminded him of the need to satisfy the PFD's eligibility requirements. Each letter enclosed a "PFD Eligibility Supplemental Questionnaire" and instructions that if he completed it and satisfied the criteria, the assessor's office would reconsider the denial.
Markham returned the 2013 supplemental questionnaire, noting he had been absent from Alaska for approximately ten months in 2012: August 2011 through June 2012; August 2012 through December 9, 2012; and December 21, 2012 through "present" (February 25, 2013). He claimed that all three time periods were allowable absences because he "[a]ccompanied an eligible Alaska [r]esident as the resident's spouse," "[v]acationed," "[c]ared for a parent, spouse, sibling, child, or stepchild with a critical life-threatening illness that required the ill individual to leave Alaska for treatment," and left the state for "[o]ther reasons, including business." Markham also included a 12-page letter outlining why he believed he was an Alaska resident, but he did not include any documentation of the reasons for his absences. The assessor again denied his application, and he appealed to the Borough's Board of Equalization.[9]
Markham asked to attend his appeal hearing before the Board by telephone. The Board denied his request because the Borough Code did not permit it.[10] Markham therefore appointed another Kodiak resident to appear as his representative.[11] After hearing from the representative, considering Markham's written materials, and noting Markham's failure to provide supporting documentation for his absences, the Board affirmed the assessor's denial.
Markham also returned the 2014 supplemental questionnaire, listing absences totaling approximately 279 days between February and June 2013 and from August 2013 through mid-February 2014. He again claimed his absences were allowable because they were for "continuous medical treatment," "[v]acation[ ]," "car[ing] for a parent, spouse, sibling, child, or stepchild with critical life-threatening illness that required the ill individual to leave Alaska for treatment," and "[o]ther reasons, including business." He emailed the assessor declining to provide documentation, asserting that it was confidential and he was concerned it would be subject to public disclosure. The assessor again denied the application; Markham again appealed to the Board.
Markham requested to appear at the Board hearing by telephone and was again denied based on the Borough Code.[12] Markham then sent another representative to appear on his behalf to the hearing. The Board affirmed the assessor's denial.
B. 2013 Superior Court Proceedings
In June 2013 Markham appealed the Board's denial of his 2013 application in the Anchorage superior court. His statement of points on appeal claimed that the Board abused its discretion by applying the PFD eligibility criteria to him when he alleged that the Borough failed to adopt procedures for applying the PFD eligibility criteria as required by AS 29.45.030(f) ;[13] that the Board therefore did not have authority to hear his *948 appeal or require him to satisfy the PFD eligibility criteria; that the Board violated his due process rights; that AS 29.45.030(f) violated his constitutional right to equal protection; and that AS 29.45.030(f) violated his constitutional right to travel.
The Board moved to change venue, arguing that Kodiak was the proper venue. Markham opposed the motion, but the court granted the motion in November 2013, changing venue to Kodiak.
On July 11, 2014, the Kodiak superior court gave Markham an August 11 deadline to file his opening brief. Prior to and shortly after the change in venue, Markham filed a series of documents - each opposed by the Board - seeking to supplement the record and opposing the Board's motion for change of venue and motion to stay. Among the documents Markham filed was a "Petition for Reconsideration of February 10 and 18, 2014 Orders In Light of Intervening Alaska Supreme Court Decision." In the conclusion of his petition Markham sought "a stay of this court's briefing order" until he could review the Board's records and move to supplement the record on appeal. The Board opposed the petition, noting that it did not comply with appellate rules, but did not address the request for stay. The superior court denied the petition in late September, but likewise did not address Markham's request for stay.
The Board moved to dismiss Markham's appeal on October 23. It cited Appellate Rules 612, 503, and 511.5, and pointed out that Markham's brief was more than 60 days delinquent. Markham opposed the motion, claiming that he had requested a stay and that the court's September 29 order denying his petition "[had] not come to his immediate attention" because it was mailed to his Kodiak address, not his Washington address where he was residing and which he had listed with the court as his contact address. The court denied the motion to dismiss, explaining that before the court could dismiss an appeal for failure to comply with the briefing schedule, the court must inform the appellant of the pending dismissal and allow an additional 14 days to file the brief.[14]
The court gave Markham an additional 14 days from November 17 to file his brief. Markham mailed his brief on December 1. On December 8, 2014, the court dismissed the appeal because it had not received Markham's brief within the allotted 14 days.
Markham moved for reconsideration, arguing that his brief was timely because Appellate Rule 502(d) recognizes the date of mailing as the date of filing. The Board responded that Markham's brief was due on December 1, and that Appellate Rule 602(j)"unambiguously" required him to file the brief at the Kodiak superior court on or before the due date.[15] Markham replied that he had relied on an " 'older' set of Alaska Court Rules," which predated the amendment of Appellate Rule 602(j). He also argued that he acted reasonably, that there was no prejudice to the Board in accepting his late-filed brief, and that he had shown just cause. The superior court denied the motion to reconsider. The court's order stated that the case was clearly governed by Appellate Rule 602(j) and Markham's brief was therefore untimely. It rejected Markham's argument that the Board had suffered no prejudice, found that there was no justification for his late filing, and found that he "continuously flouted the Rules of Procedure during his appeal." The court then invited the Board to file a proposed bill of costs.
The Board requested monetary sanctions or attorney's fees totaling $ 32,551.65. Markham opposed the motion, arguing that he was a "public interest constitutional litigant." In March 2015 the court awarded the Board $ 7,438.93 in attorney's fees and costs.
*949 Markham appealed the dismissal and attorney's fees and costs award.
C. 2014 Superior Court Proceedings
In December 2014 Markham appealed the Board's denial of his 2014 application to the Kodiak superior court. He listed the same grounds as his 2013 appeal, adding that the assessor should have been disqualified due to bias and that the Borough ordinances were void because they exceeded the authority granted by AS 29.45.030. He moved to supplement the record to include the entire record from the 2013 proceedings and an affidavit from his representative at the hearing. The court allowed only a few documents to which the Board did not object.
The superior court heard oral argument in August 2016 and denied the appeal in February 2017. The court found that the exemption was constitutional both on its face and as applied to Markham and that the Board had not violated his due process rights. In July the court amended its order to clarify the standards of review and make explicit findings of the substantial evidence that supported the Board's decision. The Board requested additional time to file a motion for attorney's fees and costs, but the superior court stayed the issue of attorney's fees and costs pending the resolution of Markham's 2013 appeal.
Markham appealed.
III. STANDARD OF REVIEW
"When the superior court is acting as an intermediate appellate court, we independently review the merits of the underlying administrative decision."[16] "A constitutional issue presents a question of law which we review de novo, and to which we apply our independent judgment."[17] In using our independent judgment, "[w]e adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[18] We review a superior court's dismissal of an administrative appeal for failure to prosecute under the abuse of discretion standard.[19] We will find a superior court's decision to dismiss an appeal under Appellate Rule 511.5 was an abuse of discretion if the decision is "arbitrary, capricious, manifestly unreasonable, or ... stem[s] from an improper motive."[20] "[W]e review de novo whether the superior court correctly applied the law in awarding attorney's fees."[21]
IV. DISCUSSION
A. The Superior Court Did Not Abuse Its Discretion By Dismissing The 2013 Appeal.
Markham suggests that the superior court abused its discretion by dismissing his 2013 appeal because it "had both the duty to advise [him] of his specific error" in filing his brief late and to allow him to correct it because he was a pro se litigant.[22] This argument has no merit. Markham is an attorney who, as the superior court observed, "by his own account has been practicing law for decades in Alaska." His decision to pursue his own case does not entitle him to the leniency we give pro se litigants in their attempts to conform with procedural requirements. Furthermore, despite being given more notice and procedure than the rules require,[23] Markham failed to familiarize himself with *950 relevant court procedures,[24] failed to comply with the court's deadline, failed to file a brief for over a year and a half after filing the notice of appeal, and, as the superior court found, "continuously flouted the Rules of Procedure." The court was well within its discretion to dismiss his 2013 appeal.
B. There Is No Violation of Markham's Right To Equal Protection.
Markham does not dispute that he spent significantly more time outside of Alaska in 2013 and 2014 than the PFD program permits to qualify as an eligible PFD recipient. As a result, the Borough assessor determined that he also did not qualify for the tax exemption pursuant to former Kodiak Island Borough Code (KIBC) 3.35.080(D). He argues, however, that the eligibility requirements incorporated into former KIBC 3.35.080(D) are unconstitutional because they violate his right to equal protection. He claims that because he owns his home, does not rent it out, and is a resident for other purposes such as voting and obtaining a driver's license,[25] he should be eligible for the tax exemption. This argument mirrors those we have already addressed in the PFD context,[26] which is not surprising because the Borough based eligibility for the tax exemption on the same criteria as the PFD.[27]
Like the PFD, the tax exemption is an economic benefit conferred by the State.[28] We have previously held that restricting the PFD to bona fide residents does not violate an individual's right to equal protection.[29] We held that strict residency and physical presence requirements furthered a legitimate state interest because the PFD is a portable cash benefit and is "particularly susceptible to passers-through establishing minimal ties to Alaska while intending to reside elsewhere."[30] The tax exemption is similarly portable: it provides a cash benefit for those individuals who receive it. It therefore follows that although the precise economic benefit conferred here is different - a tax exemption rather than a PFD - the analysis is the same.
Markham appears to base his equal protection argument on a comparison between a class of senior citizens who do not remain in Alaska for 185 days each year due to their travel and senior citizens who do remain in Alaska for 185 days each year. But the appropriate classes that we must consider are: individuals 65 years of age or older who own and occupy a primary residence and permanent place of abode in Kodiak and meet the eligibility requirements as strictly defined by the PFD statutes; and individuals 65 years of age or older who own and occupy a primary residence and permanent place of abode in Kodiak and do not meet the eligibility requirements as strictly defined by the PFD statutes.
We first recognize that the Borough's tax exemption is merely an economic interest similar to the PFD and therefore is entitled only to minimum scrutiny.[31] "Under the minimal level of scrutiny, the state ... needs to show [only] that the 'challenged enactment was designed to achieve a legitimate governmental objective and that the means bear a "fair and substantial" relationship to the accomplishment of that objective.' "[32] The issue *951 is thus whether the Borough had a legitimate reason to treat those who meet the eligibility requirements under the PFD statutes differently than those who do not.
The State and its municipalities have a legitimate, if not substantial, interest in assuring that only those with sufficiently close connections with Alaska receive an economic benefit conferred by the State.[33] In Heller v. State, Department of Revenue we recognized that the PFD is a portable cash benefit intended only for Alaska residents.[34] And we recognized the danger that those who were not bona fide residents might obtain that cash from Alaska, but then reside and spend it elsewhere.[35] We found that the PFD's residency requirement, specifically requiring six months of physical presence in the State before one could claim an allowable absence under AS 43.23.008(a), was not excessively long; rather, it was designed to ensure that PFDs went only to Alaska residents to reduce the likelihood that this portable cash benefit would be obtained and spent in other states by individuals who were only briefly in Alaska.[36] We upheld the PFD's physical residency requirement as constitutional because "the statute directly advances a state interest that is undoubtedly 'legitimate.' "[37]
The physical presence requirement here accomplishes the same goal. In Heller we noted that the physical presence requirement of the PFD statutes is used as a way to distinguish between residents and nonresidents for the purpose of PFD eligibility.[38] Indeed, "the legislature defined 'state resident' as an individual who meets the requirements set out in AS 01.10.055 and is either physically present in the state or temporarily absent under the allowable absence provision .... This shows that the allowable absence provision was intended to distinguish between residents and nonresidents."[39]
Like the PFD, the Borough's tax exemption is portable and intended to benefit only those who remain in Alaska;[40] it directly translates to cash-in-hand for property owners who receive it, as they pay nearly $ 2,000 less in taxes. The exemption reduces taxes only for an individual's primary residence as a way of encouraging senior citizens to remain in Alaska;[41] it is not intended to be a discount on second homes or vacation homes.[42] By maintaining stringent eligibility requirements, the Borough has elected not to subsidize second homes or vacation homes and instead has ensured that the tax exemption benefits only those who remain in Alaska.[43] This is a legitimate state interest.
Moreover, the option for municipalities to incorporate the PFD eligibility requirements[44] was adopted by the legislature to make the process easier on both the municipality administering the applications and those applying for the tax exemption.[45] Additionally, *952 the tax exemption is meant to encourage senior citizens to remain in Alaska, not a particular locality within Alaska.[46] Thus, although the tax exemption is administered at a local level, it is a state-mandated exemption meant to benefit those who wish to remain in Alaska. Allowing adoption of the PFD eligibility criteria was rationally related to the State's legitimate interest. The tax exemption therefore withstands minimal scrutiny and does not violate Markham's constitutional right to equal protection.
C. The Eligibility Requirements For The Borough's Tax Exemption Do Not Violate The Privileges And Immunities Clause Or The Right To Travel.
Markham next argues that the Borough's eligibility requirements for its tax exemption violate his right to travel guaranteed by both the Alaska Constitution and the United States Constitution.[47] This argument has no merit. As it was authorized to do by statute,[48] the Borough imported the PFD program's eligibility requirements. We "squarely" and expressly rejected the same arguments Markham makes in a direct challenge to the PFD eligibility requirements.[49]
"When examining [a statute's] impact on the right of interstate migration, the relevant questions are whether [the benefit conferred by the statute] operates in such a way that the reasonable recipient would be deterred from exercising the right to travel, and the degree of that deterrence."[50] We held in Church v. State, Department of Revenue that the PFD eligibility requirements' "infringement on [an individual's] right to travel is relatively small and would not be likely to deter a person from traveling. An applicant has no vested property right in a permanent fund dividend and should not expect to receive a dividend if he doesn't meet the qualifications."[51] The purpose in awarding the tax exemption only to those who wish to remain in Alaska "outweighs the minor infringement" on an individual's right to travel.[52] The Borough's tax exemption therefore does not violate his fundamental right to travel.
D. The Borough Did Not Violate Markham's Right To Privacy.
Markham claims that the Borough violated his right to privacy by requiring him to provide documentation that his absences were allowable. This argument also lacks merit. "The burden of proving eligibility for an exemption is on the taxpayer."[53] Markham applied for a benefit and in response to his application was asked to provide minimal corroboration of his claimed allowable absences. His refusal to do so simply means he could not receive the benefit for which he applied.[54] Markham was not *953 required to apply for this benefit or disclose medical information;[55] he was free to decline the request for supporting information (and he did so).[56] By asking for the benefit of a tax exemption, Markham invited the Borough assessor to determine his eligibility to receive it.[57] By accepting his invitation, the Borough did not violate Markham's right to privacy.
E. The Board Did Not Violate Markham's Right To Due Process.
Markham asserts that the Board violated his due process rights because: (1) under KIBC 3.35.050(A)(3) the Board only has authority to hear valuation appeals; (2) the Board did not allow him to appear at the hearing by telephone; and (3) the Board declined to consider his late-filed supplemental documents. These arguments are neither clearly briefed nor do they persuade us that the Board violated Markham's rights to due process.[58] "The crux of due process is an opportunity to be heard and the right to adequately represent one's interests."[59]
Markham first argues that the Board only has authority to hear valuation appeals. But the Alaska Administrative Code expressly allows an applicant to appeal "any determination of [a] local assessor" to the local Board of Equalization.[60] Markham was given that opportunity.
He next argues that he should have been allowed to appear by telephone at the Board's hearings and that the Board violated his due process rights by prohibiting him from doing so. KIBC 3.35.050(C) provides the opportunity to appear in person or to send a personal representative and allows the Board to proceed if neither the appellant nor a representative appears.[61] Due process requires only a reasonable opportunity to be heard based on "the nature of the case."[62] Markham was given such opportunity. He chose not to appear in person because it would have been an inconvenience. And he chose to send a representative on his behalf to advocate his interests. The Board did not violate his rights to due process by prohibiting him from appearing by telephone.
Similarly, Markham argues that the Board should have considered his late-filed supplemental documents. But he was given the opportunity to present such documentary evidence in support of his claims in a timely manner. The Board even gave him an extended deadline to submit any documents he wanted considered on appeal. And although he suggests that his late-filed documents did not cause any prejudice, the Board had discretion to choose whether to consider them.[63]
*954 The Board did not violate Markham's rights to due process by electing not to do so.
To the extent that Markham argues his rights to due process were violated because the Board lacked authority to rule on the constitutionality of former KIBC 3.35.080(D), this argument is waived for inadequate briefing.[64]
Accordingly, the Board did not violate Markham's rights to due process.
F. All Other Arguments Are Abandoned By Inadequate Briefing.
To the extent that Markham alleges that the Borough assessor was biased, that the superior court abused its discretion by failing to supplement the record with an affidavit from a representative he sent to the Board hearing, that the Board wrongly prohibited Markham's representative from advocating on his behalf at the Board hearing, and that the Borough attorney's communications with the Borough clerk violated due process, these arguments are abandoned by inadequate briefing. Markham did not argue or provide support for these issues in his briefing.
G. The Superior Court Did Not Address AS 09.60.010 Or Make The Requisite Factual Findings To Determine Attorney's Fees.
After the superior court dismissed Markham's 2013 appeal, the Board requested full fees and costs as a sanction for Markham's extensive filings and delays. The superior court did not award full fees nor did it suggest that its award of partial fees and costs was a sanction, but rather awarded 20% of fees and costs under Appellate Rule 508(e).[65] However, the superior court did not address Markham's claim that he was a constitutional litigant exempt from attorney's fees under AS 09.60.010(c).[66] While the case was dismissed for failure to prosecute, the underlying claims were constitutional claims of equal protection, travel, privacy, and due process. Because he raised constitutional claims, Markham may have been shielded by AS 09.60.010(c) unless the court determined he had a sufficient economic incentive to bring his claims. We therefore vacate the superior court's award of attorney's fees and remand for the superior court to address the issue pursuant to AS 09.60.010.
V. CONCLUSION
We AFFIRM the superior court's dismissal of the 2013 appeal and denial of the 2014 appeal on the merits, but VACATE the superior court's award of attorney's fees and REMAND for further proceedings on this issue.

AS 29.45.030(e).

Id.

AS 29.45.030(f).

See former Kodiak Island Borough Code (KIBC) 3.35.080(D).

AS 43.23.005(a)(6).

AS 43.23.008(a)(6).

AS 43.23.008(a)(13).

AS 43.23.008(a)(17)(C). This provision does not apply to military absences, which receive different treatment. See AS 43.23.008(a)(3), (a)(17)(A).

See KIBC 03.35.050(A)(3) (discussing Board of Equalization's role), (C) (governing appeals to Board of Equalization).

See KIBC 3.35.050(C)(4) (requiring parties or their representatives to appear at hearing in person).

See KIBC 3.35.050(C)(1) (allowing authorized representatives to appear on behalf of appellants).

KIBC 3.35.050(C)(4).

See AS 29.45.030(f) ("Each municipality shall, by ordinance, establish procedures and deadlines for filing the application.").

Alaska R. App. P. 606(a), 511.5(a). We note that Alaska Rules of Appellate Procedure 511.5(a) and 511.5(c) appear to be at odds. Rule 511.5(a) entitles an appellant to an additional 14-day "grace period," while Rule 511.5(c) allows the court to dismiss an appeal for failure to comply with the rules (i.e., failure to timely file a brief), regardless of whether prior notice has been given. In Cowitz v. Alaska Workers' Compensation Board , we noted that "[t]here is no logical way to reconcile these two subsections," but that if Rule 511.5(a) granted each appellant a 14-day grace period, then the 30-day brief filing deadline would be meaningless. 721 P.2d 635, 637 (Alaska 1986). Accordingly the court was not required to grant the 14-day extension but did so in its discretion.

See Alaska R. App. P. 602(j) ("Documents mailed to the superior court will be deemed filed on the date of receipt by the clerk.").

Heller v. State , 314 P.3d 69, 72 (Alaska 2013) ; see also Griswold v. Homer City Council , 310 P.3d 938, 940 (Alaska 2013).

Patterson v. Walker , 429 P.3d 829, 831 (Alaska 2018) (quoting Debra P. v. Laurence S. , 309 P.3d 1258, 1260 (Alaska 2013) ).

Heller , 314 P.3d at 72-73.

Collins v. Arctic Builders , 957 P.2d 980, 981 (Alaska 1998).

Id. (alterations in original) (quoting Sheehan v. University of Alaska , 700 P.2d 1295, 1297 (Alaska 1985) ).

City of Kodiak v. Kodiak Public Broadcasting Corp. , 426 P.3d 1089, 1093 (Alaska 2018) (quoting Brandner v. Pease , 361 P.3d 915, 920 (Alaska 2015) ).

See Collins , 957 P.2d at 982 (concluding that judges must inform pro se litigants of specific procedural defects in notices of appeal or grant the opportunity to correct them).

Markham had notice that his appeal was going to be dismissed, was given the opportunity to remedy his failure to file before the dismissal, and was given a 14-day extension after his brief was already 90 days late. As previously discussed, the court was not required to provide the additional 14-day extension but did so despite Markham's repeated failure to abide by procedural requirements. See Cowitz v. Alaska Workers' Comp. Bd. , 721 P.2d 635, 637 (Alaska 1986) ; Alaska R. App. P. 511.5(c).

See Cowitz , 721 P.2d at 638 ("It is an appellant's responsibility to file an opening brief, and counsel cannot expect court supervision of this procedural rule.").

See AS 01.10.055 (setting out general residency requirements).

See Heller v. State, Dep't of Revenue , 314 P.3d 69, 73-81 (Alaska 2013) ; Church v. State, Dep't of Revenue , 973 P.2d 1125, 1129 (Alaska 1999) ; Brodigan v. Alaska Dep't of Revenue , 900 P.2d 728, 733 n.12 (Alaska 1995).

See former KIBC 3.35.080(D).

See Heller , 314 P.3d at 83 ; Church , 973 P.2d at 1130 ; Brodigan , 900 P.2d at 734 n.13.

Heller , 314 P.3d at 82-84.

Id. at 79-82.

See State v. Schmidt , 323 P.3d 647, 663 (Alaska 2014) ("Government action that burdens only economic interests generally receives only minimum scrutiny."); Heller , 314 P.3d at 83 ; Church , 973 P.2d at 1130 ; Brodigan , 900 P.2d at 734 n.13.

Church , 973 P.2d at 1130 (quoting Underwood v. State , 881 P.2d 322, 325 (Alaska 1994) ).

See Attorney Gen. of N.Y. v. Soto-Lopez , 476 U.S. 898, 904 n.3, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) ("A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents."); Heller , 314 P.3d at 82, 82 n.72 (discussing the State's "undoubtedly legitimate" interest in assuring its economic benefits go to only bona fide residents); Stanek v. Kenai Peninsula Borough , 81 P.3d 268, 272 (Alaska 2003) (discussing the "unquestionably legitimate goals" in promoting home ownership through tax exemption residency requirements because it is beneficial to the community).

Heller , 314 P.3d at 79.

Id.

Id. at 79, 80-81.

Id. at 82.

Id. at 81-82.

Id. at 79 (emphasis in original).

Minutes, Sen. Finance Comm., Hearing on S.B. 337, 22nd Leg., 2d Sess. (Feb. 28, 2002) (testimony of Sen. Dave Donley).

Id.

AS 29.45.030(e) (requiring exempt real property to be "the primary residence and permanent place of abode"). If an individual cannot meet the eligibility requirements then the real property is not his or her primary residence for purposes of the tax exemption. See Stanek v. Kenai Peninsula Borough , 81 P.3d 268, 271 (Alaska 2003) (discussing a property tax exemption that differentiates between "owners of owner-occupied primary residences in the borough and owners of second homes or other types of real property in the borough").

See Stanek , 81 P.3d at 272.

AS 29.45.030(f).

Minutes, Sen. Finance Comm., Hearing on S.B. 337, 22nd Leg., 2d Sess. (Feb. 28, 2002) (testimony of Sen. Dave Donley). The tax exemption is a state-wide mandated tax exemption, meaning if an individual qualifies for the tax exemption, the municipality must grant it. However, this is an unfunded mandate by the State upon local governments. The legislature adopted this provision in part to save local governments time and money during the application process. Id. Additionally, approximately 95% of those who apply for the tax exemption throughout the State also apply for the PFD. Minutes, Sen. Finance Comm., Hearing on S.B. 337, 22nd Leg., 2d Sess. (Mar. 28, 2002) (testimony of Tim Rogers, Legislative Program Coordinator for the Municipality of Anchorage). Thus, allowing those individuals to simply transfer that information makes the application process easier. Id.

See Minutes, Sen. Finance Comm., Hearing on S.B. 337, 22nd Leg., 2d Sess. (Feb. 28, 2002) (testimony of Sen. Dave Donley).

U.S. Const. amend. XIV, § 1 ; Alaska Pac. Assurance Co. v. Brown , 687 P.2d 264, 271 (Alaska 1984) ("The right of interstate migration is a part of the Alaska Constitution.").

AS 29.45.030(f).

Schikora v. State, Dep't of Revenue , 7 P.3d 938, 944 (Alaska 2000).

Alaska Pac. Assurance Co. , 687 P.2d at 273.

973 P.2d 1125, 1131 (Alaska 1999) (internal citations omitted).

Id. (quoting Brodigan v. Alaska Dep't of Revenue , 900 P.2d 728, 734 n.13 (Alaska 1995) ).

Fairbanks N. Star Borough v. Dená Nená Henash , 88 P.3d 124, 129 (Alaska 2004).

See AS 29.45.030(f) ("The assessor shall require proof in the form the assessor considers necessary of the right to and the amount of an exemption claimed under (e) of this section ....").

Cf. Falcon v. Alaska Pub. Offices Comm'n , 570 P.2d 469, 475-76 (Alaska 1977) (discussing a regulation that required a doctor to disclose his patient's names).

If Markham had provided such documentation, there are sufficient safeguards in place to ensure protection of his privacy interest. AS 40.25.120(a)(3) (exempting "medical and related public health records" from public disclosure); KIBC 2.40.100(A)(7) (exempting "[r]ecords required to be kept confidential ... by state law or by borough law" from disclosure).

We note that the Borough assessor explained that a letter from a doctor would have sufficed and that it did not need to "go into any kind of medical detail."

We analyze procedural due process claims under the test articulated in Mathews v. Eldridge :
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Church v. State, Dep't of Revenue , 973 P.2d 1125, 1130 (Alaska 1999) (quoting Keyes v. Humana Hosp. Alaska, Inc. , 750 P.2d 343, 353 (Alaska 1988) ).

3 Alaska Administrative Code (AAC) 135.110(a).

KIBC 3.35.050(C)(1), (4).

See Griswold v. Homer Bd. of Adjustment , 426 P.3d 1044, 1045 (Alaska 2018) ("[P]rocedural due process under the Alaska Constitution requires notice and opportunity for hearing appropriate to the nature of the case." (alteration in original) (quoting Price v. Eastham , 75 P.3d 1051, 1056 (Alaska 2003) )); see also Church , 973 P.2d at 1130 (holding summary adjudication satisfied procedural due process in appeal of PFD denial).

KIBC 3.35.050(E)(5) provides:
The appellant must submit to the assessor's office by April 15th all documentary evidence in their possession which they wish to be considered and which is relevant to the resolution of the appeal.... The board of equalization may in its discretion decline to accept documents offered at the hearing which should have been provided by April 15th.... Prior to the board meeting, the appellant and assessor may agree to an extension of time for the production of evidence.

See Windel v. Carnahan , 379 P.3d 971, 980 (Alaska 2016).

This rule has been modified since the superior court's decision in 2015.

AS 09.60.010(c)(2) states:
In a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court ... may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant ... did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved.